(11 App. Div. 24.)

PEOPLE ex rel. SIMIS v. PALMER.

(Supreme Court, Appellate Division, Second Department. December 15, 1896.)

MUNICIPAL CORPORATIONS—UNEXPENDED APPROPRIATIONS.

Under Brooklyn City Charter, tit. 18, § 3, providing that "any surplus remaining on account of any appropriation at the end of any year may be applied as the common council may direct," money paid to the city comptroller by a department as a surplus over the needs of such department for the preceding year is not a fund in the comptroller's hands applicable to a contract authorized

by the city council for the erection of a building for said department, and therefore mandamus will not lie to compel the comptroller to certify that he had in hand means to make payment on the contract, which certificate is required by the city charter (title 18, § 3) to make the contract operative.

Appeal from special term, Kings county.

Application by A. Simis, Jr., as president of the board of charities and corrections, for a writ of mandamus requiring George W. Palmer, as comptroller of the city of Brooklyn, to certify a contract. From an order directing the issuance of a peremptory writ, the comptroller appeals. Reversed.

Argued before BROWN, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Joseph A. Burr, for appellant.
John A. Quintard, for respondent.

HATCH, J. It is conceded by the appellant that under the act (Laws 1895, c. 954) which consolidated the governments of the city of Brooklyn and the county of Kings the department of charities and corrections of said county was continued as a department of the city, vested with the same powers, duty, and authority as it possessed at the time when the consolidation act took effect. In the absence of this concession, we should hold as matter of law that such result was attained by the act. It is conceded by the learned counsel for the relator that the department of charities and corrections did not possess the power to erect or contract for the erection of buildings prior to the passage of the consolidation act, and that the latter act confers no such power. An examination of the several statutes from which has resulted the creation of this department, and which have defined its powers, amply justifies the wisdom of relator's concession. These concessions reduce the question presented by this appeal to very narrow limits. It is clear that authority to execute the contract in question is vested in the commissioner of city works, when authorized by the common council of the city. We shall assume that this authority has been obtained, and to that extent the contract is authorized. This contract, however, is without force until the comptroller shall certify or indorse upon it "that the means required to make the payments under such contract are provided and applicable thereto." City Charter of Brooklyn, tit. 18, § 3. A false certificate or indorsement by the comptroller is made a misdemeanor, and a conviction therefor forfeits his office. The court should therefore be able to see a clear right in the relator to the comptroller's certificate or indorsement before issuing its mandate compelling him to a performance of the act. The resolution of the common council which authorized the commissioner of city works to execute the contract failed to provide for payment of the contract price, and no appropriation has ever been made by that body of any moneys for that purpose. The contract price for the erection of the building is the sum of $39,600. At the time when the contract was presented to the comptroller for certification the department of charities and corrections had to its credit with the comptroller only the sum of $5,050. But subsequent there-

to, and about August 7th following, there was paid to the comptroller by the department of charities earnings and receipts of money for the fiscal year ending July 31, 1896, earned by the labor of prisoners confined in the penitentiary, the sum of $45,742.48. Relator's claim now is that this sum was applicable to be applied in discharge of the sum required to be paid in fulfillment of the contract. We are cited to no authority or statutory provision which makes the moneys paid by the department to the comptroller the subject of exclusive application to the needs of the department. On the contrary, when they are paid over to the city officials charged with the duty of receiving the same, they become city moneys, and are the subject of appropriation for city purposes by the body charged with that duty. The relator relies upon article 3, c. 382, Laws 1889, to support the proposition that the moneys are exclusively available for the needs of the particular department from which they came. No such provision is found in the law, nor are we able to find any provision of law which works such a result. The charter of the city of Brooklyn provides (title 6, § 1), inter alia, that no moneys shall be drawn from the treasury except in pursuance of an appropriation by the common council, or under the provisions of existing laws. It is conceded that there is no resolution of the common council which appropriated any moneys for this purpose, and there is no provision of existing law which worked that result. We must bear in mind that the comptroller, before he certifies the contract, must be possessed of a sum of money which he may lawfully apply to the particular purpose, and which is sufficient therefor. Funds in his hands which may be appropriated for other purposes are not such moneys, no matter from what source they may be derived. At the time when this contract was presented to the comptroller for certification the fiscal year of the city applicable to this department was from August 1st to August 1st. Laws 1896, c. 183. The appropriation for the department had been made prior to July 1, 1895. By the provision of the charter (title 18, § 3) it is provided: "Any surplus remaining on account of any appropriation at the end of any year may be applied as the common council may direct." This provision clearly relates to the fiscal year, and not to the calendar year. The payment to the comptroller of the balance of earnings for the fiscal year was after the 1st day of August, 1896, and consequently after the expiration of the fiscal year. This made the fund then in the comptroller's hands a surplus over the needs of the department for that year, and the provision of the charter above quoted applied thereto. The learned court below seems to have assumed that the provision of the charter applied to the calendar year, in which event the condition might have been changed. There seems to have existed a clear misapprehension in the mind of the learned court below respecting the admission of the corporation counsel, and the counsel for the relator relies upon such admission now. But he has enlarged it beyond the bounds of recognition. The court below stated this admission in these words: "That the comptroller could not apply the credits of the department to any other purpose than those of the department." Relator's

counsel says the corporation counsel "expressly conceded that the $45,000 now in the hands of the comptroller as earnings of the department of charities cannot be used for any other purpose except for purposes of the department of charities." What the corporation counsel did concede was that the comptroller had no power to expend for any other purposes money to the credit of the department. And this is quite true. But this is very far from an admission that the money then in the comptroller's hands stood to the credit of the department, or that it was not the subject of appropriation by the common council. It would be quite true, as the corporation counsel said, that the comptroller could not apply the money standing to the credit of the department. But the common council could, which is the essential fact. There is no proof that the payment of the $45,000 was placed to the credit of the department of charities. It could not be so placed by the comptroller at the time when he received it, so as to vest in the department any special right therein, as it then represented an unexpended balance, and consequently the subject of appropriation for other purposes by the common council. It follows that there was no fund in the comptroller's hands which he could apply in discharge of the liability created by the contract, and, in consequence, he was justified in refusing to certify or indorse the contract.

The order appealed from should therefore be reversed, without costs. All concur.